Joseph L. STUTTS, Jr.,
Plaintiff-Appellant,

v.

S. David FREEMAN, as Chairman of the Board of Directors of the Tennessee Valley Authority, et al., Defendants-Appellees.

No. 82–7028.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1983.

---

James L. Marks, Hewlett & Black, Muscle Shoals, Ala., for plaintiff-appellant.

Herbert S. Sanger, Jr., Justin M. Schwamm, Sr., David W. Miller, Richard E. Riggs T.V.A., Knoxville, Tenn., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

FAY, Circuit Judge:

This is an appeal from the denial of a Rule 59(e), Fed.R.Civ.P. motion to alter or amend a judgment. That motion was made challenging the granting of a motion for summary judgment in favor of the defendant in a suit brought under the Rehabilitation Act of 1973, *as amended,* 29 U.S.C. § 701 et seq. (1978). Specifically, the appel-

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

lant, Mr. Stutts, contends that the defendant, Tennessee Valley Authority (TVA), violated 29 U.S.C. § 794 in refusing to allow him, as a TVA employee, to enter an apprenticeship program for the position of heavy equipment operator. Mr. Stutts argues that he is an "otherwise qualified handicapped individual" under the statute and that summary judgment was improper. While we do not decide the question whether Mr. Stutts was an "otherwise qualified handicapped individual", we agree that summary judgment should not have been granted in TVA's favor and reverse the denial of the Rule 59(e) motion.

*Facts*

The uncontroverted facts show that in 1971, Mr. Stutts was hired by TVA as a laborer at TVA's Colbert Steam Plant in Colbert County, Alabama where he worked temporarily until 1973 when he was hired on a permanent basis. In 1979, Mr. Stutts applied for an opening with TVA in an apprenticeship training program to become a heavy equipment operator. His application was denied on the basis of a "low" score on the General Aptitude Test Battery (GATB), a test used by TVA to predict the probability of success of an applicant in the training program.

Mr. Stutts has been diagnosed as having the condition of dyslexia, which impairs his ability to read. The record indicates that this disability renders Mr. Stutts incapable of reading beyond the most elementary level, and leads to an inability to perform well on written tests such as the GATB. There is evidence that Mr. Stutts was evaluated by doctors and tested with non-written tests after receiving results of his GATB test and was judged to have above average intelligence, coordination and aptitude for a position as a heavy equipment operator. TVA tried to obtain the results of these non-verbal tests in connection with Mr. Stutts' application for the apprenticeship training program, but was unable to do so. Attempts to persuade the testing service[1] to give Mr. Stutts an oral GATB were unsuccessful because scoring on the written GATB is based on standardized and uniform testing conditions and cannot be accurately translated from an oral test. Despite TVA's knowledge of and unsuccessful efforts to obtain alternate forms of evaluation, Mr. Stutts' nonselection was based solely on his low score on the written GATB test.

*Discussion*

The controlling section of the Rehabilitation Act of 1973 reads in part as follows:

No otherwise qualified handicapped individual in the United States, . . ., shall solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . .

29 U.S.C. § 794.

"Handicapped individual" is defined as follows:

[A]ny individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services . . . . (B) . . . [A]ny person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(7)(A), (B).

■ The policy underlying the Rehabilitation Act of 1973 is clear—"to promote and expand employment opportunities in the public and private sectors for handicapped individuals". 29 U.S.C. § 701(8). Both parties agree that Mr. Stutts is a handicapped individual and that the main hiring criteria—the GATB test—could not accurately reflect Mr. Stutts' abilities. There is considerable evidence supporting Mr. Stutts' contention that he is fully capable of performing well as a heavy equip-

---

1. The Alabama State Employment Service administers the GATB test.

ment operator and we find a genuine issue as to whether or not he could successfully complete the training program, either with the help of a reader or by other means. Congress has clearly directed entities in its sphere of control to make efforts to expand employment opportunities for handicapped persons. TVA has not satisfied its obligation under the statute by merely asking for results of alternate testing methods and accepting a rejection.

We do not hold that Mr. Stutts must be given a position as a heavy equipment operator, nor do we hold that he must be admitted into the training program. We do hold that when TVA uses a test which cannot and does not accurately reflect the abilities of a handicapped person, as a matter of law they must do more to accommodate that individual than TVA has done in regard to Mr. Stutts. TVA argues that their efforts on behalf of Mr. Stutts showed that he received better treatment than a non-handicapped applicant. TVA sought to have a non-written GATB test given to Mr. Stutts. They tried to obtain the results of other examinations and tests given Mr. Stutts after his dyslexic condition was discerned. But the fact remains that these efforts were not successful. In the final analysis TVA made its decision based on the GATB test. TVA's unsuccessful efforts do not amount to "reasonable accommodation" of the handicapped as required by 45 C.F.R. § 84.12 (1981).

The district court granted TVA's motion for summary judgment on the ground that Mr. Stutts had failed to show that he had similar qualifications to non-handicapped individuals who were hired for the position [2] as required under *McDonald Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To the extent that the district court based this finding on the GATB test results, it was in error.[3] Our review of appeals from Rule 59(e) motions is limited to abuses of discretion. Such abuse is present here. When an employer like TVA chooses a test that discriminates against handicapped persons as its sole hiring criterion, and makes no meaningful accommodation for a handicapped applicant, it violates the Rehabilitation Act of 1973.

The summary judgment is set aside and the case REMANDED for further proceedings consistent with this opinion.

2. Of the two selectees, one scored "high" and the other "medium" on the GATB test.

3. *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) does not control. There, the Supreme Court held that a nursing school was not compelled by the Rehabilitation Act of 1973 to admit an applicant with a serious hearing disability. It was found that the ability to hear speech was a necessary qualification for a nurse. The Court refused to order the school to hire someone to follow the applicant around daily to interpret speech for the applicant whenever necessary. In this case TVA has not shown that the ability to read is a necessary physical qualification or that, if Mr. Stutts needs accommodation, it would be an unreasonable burden on TVA to provide it. Issues of whether the test or even the training program are sufficiently job related are left for consideration on remand. "The ultimate test is whether, with or without reasonable accommodation, a handicapped individual who meets all employment criteria except for the challenged discriminatory criteria 'can perform the essential functions of the position in question without endangering the health and safety of the individuals or others' 28 C.F.R. § 1613.702(F)." *Prewitt v. United States Postal Service,* 662 F.2d 311 (5th Cir.1981). As stated earlier in the text of this opinion, the record reflects strong evidence that Mr. Stutts could probably perform most competently as a heavy equipment operator. Indeed, everyone involved in this case seems to concede that Mr. Stutts would have no problems doing the job but rather may experience difficulty with the outside reading requirements of the training program. If selected, this obstacle may be overcome by Mr. Stutts obtaining the assistance of someone to act as a "reader" (professional, friend or family member) since he is of "above average intelligence." To eliminate Mr. Stutts without implementing an alternate test (oral) administered by outside professionals or TVA's staff or by failing to "adjust" the entry requirements to accommodate his dyslexia, TVA has failed to comply with the statute.